Allen, J.
The various questions supposed to be Presented by the record in this case have been argued with much zeal and ability. But in the view that I have taken of our legislation on the subject, it does not appear to me to be necessary to discuss many of the propositions advanced in the argument. The question presented by the record is, whether, as the law stood on the 1st of January 1840, the banks paying the interest due on that day to the public creditors in specie or its equivalent, were entitled to charge the commonwealth with the premiums or discount which they were subjected to in making such payments.
On the 16th of May 1837, the banks suspended specie payments. Prior to the suspension, all the banks were bound by their charters to pay their debts in specie. Two of the banks, of which the appellee was one, were the fiscal agents of the commonwealth. All money due to the commonwealth was deposited in those banks to the credit of the treasury. The notes of all the incorporated banks in the state were receivable in the payment of taxes. With a knowledge of this fact, and of the obligation thereby imposed upon the deposit banks to receive these notes as cash, to debit themselves with that amount as so much money to the credit of the commonwealth, and to pay it as they were bound to pay other debts due by them, these banks undertook to act as the fiscal agents of the commonwealth. It may have been supposed that any responsibility for loss, growing out of the receipt of the notes of the various banks receivable in payment of public taxes, was compensated for by the advantages accruing to the banks as the chosen fiscal agents of the government. However this may be, there is no question raised as to the liability of the banks to pay *741 the debts they owed to the commonwealth in specie, and that upon a failure to pay in specie they forfeited their corporate privileges.
After the suspension in May 1837, several acts were passed for the temporary relief of the banks. By these acts the forfeitures and penalties incurred by the banks were remitted or suspended, their notes declared to be still receivable in the payment of public taxes, and the public moneys were still to be deposited as theretofore. The last act in this series was passed on the 2d of April 1838, which suspended the laws imposing forfeitures until the 1st of April 1839. During this period of legalized suspension, it became necessary to make some provision for the payment of interest to the public creditor. The commonwealth was bound, by the strongest of all obligations, to guard the public creditor from any loss growing out of the temporary embarrassments of the community, or from her indulgence to her own corporations. With this object the act of March 2S. 1838 was passed. The first section, so far as respected the existing debts, was no more than a solemn recognition by the commonwealth of the obligation of her contracts; but taken altogether, seeing that it speaks of future loans as well as the existing debts, it was clearly the object and intention of the legislature that this should be a part of. the permanent law. But such a general declaration would have been of little avail towards the support of the public credit, unless some efficient mode had been prescribed for giving it practical effect. The public creditor wanted something more than the “word of promise to the ear.” And this was given in the second section, which provided that warrants &c. in payment of interest should be discharged by the banks at which they were made payable, in the manner prescribed by the first section.
*742 This provision, it is insisted, is part of the temporary legislation growing out of the then existing suspension of specie payments, and terminated with it. I do not. concur in this construction of the law. There is nothing in the terms of the statute, or any part of it, which indicates an intention that it should expire with the cause which led to the enactment. The second section alone gives efficacy and vitality to the law: without it, the first section, which in terms refers to future times, would be an empty and unmeaning sound. If it was important to the maintenance of public credit through all time, to declare that the commonwealth recognized the obligation which good faith imposed on her; it was of tenfold more importance to provide the mode by which that obligation should be met and discharged. The law, too, regards the public credit, and the mode of preserving it, irrespective of the banks, and has no connexion, in the important particulars referred to, with the legislation concerning them.
The proviso entitling the banks to a credit in account with the commonwealth for the premium or discount they might be subjected to, necessarily refers to the then existing legalized suspension. But it is part of the second section, which I think permanent in its character; and it must, as it seems to me, receive the same construction. It is argued on behalf of the commonwealth, that this provision would be nugatory when the banks were not in a state of suspension, and that it could not have been the intention of the legislature to authorize them to charge this premium in case of a subsequent suspension, no matter under what circumstances occurring. To this I think it may be satisfactorily answered, that no such suspension could be recognized which had not received a legislative sanction. Any other construction would impute to the legislature an intention to hold out inducements for an improper *743 suspension. If, not only without authority of law, but directly in violation of it, the bank subsequently suspended specie payments, such illegal act could be the foundation of no valid claim. If, during such illegal suspension, it should fail to pay the interest in specie, there could of course be no claim against the commonwealth. But if it should pay the interest in specie, it would do no more than its charter required of it towards all its creditors; and such act, being no more than the performance of a duty, could create no claim. The proviso authorizing the charge would operate whenever, and only when, the law sanctioned a suspension. But whenever a law should so sanction and legalize a suspension of specie payments generally, the act of 1838 would justify the claim to a credit against the commonwealth for the amount of the premium. If the case rested here, and upon this act alone, the claim of the bank would be well founded for all premium or discount it may have been subjected to.
This brings us to the act of December 11.1839. In the interval between the act of March 1838 and the 11th of December 1839, the banks had resumed specie payments. The laws specially relating to the banks, so far as they remitted forfeitures and suspended penalties, had expired. The banks were again in a regular course of proceeding under the authority of their charters. In October 1839 they again suspended specie payments. Until the act of December 11. 1839 was passed, this suspension was illegal. If, before that act, they had disbursed the public money to the public creditors in payment of interest, such payment would not, as already remarked, have furnished any ground for charge against the commonwealth. No such payment was made; and the act of December 11. 1839 again sanctioned the suspension for eighty days. If the law had done nothing more, the claim to premiums would *744 have been clear under the act of 1838. But the whole effect and operation of the act of December 1839, so far as it respected the public moneys on deposit which ... . • , , ,. might be necessary to pay the interest due to public crec^tors January following, was controlled by the proviso. The act legalizes the suspension as to the creditors of the banks generally; but, by the proviso, excepts from the effect of such suspension so much of the public money on deposit as might be required to pay the January interest, if there should be so much in the banks to the credit of the commonwealth. I do not consider it important to go into the doctrine how far a subsequent statute is to be considered as a repeal of a former one. In my view, the proviso of the act of 1S39 did not repeal, and was not intended to repeal, the act of 1838, or any provision of it; and this because, as to the public money on deposit required to pay interest, the contingency had never happened, upon which alone the act of 1S38 could operate. That act, as I have attempted to shew, did not justify the charge for premiums, except when the payment was made during a legalized suspension. The suspension in October 1839 w'as illegal; and until it was sanctioned, no payment made during its continuance could confer a right to charge the commonwealth. The act of December 1839 gave that sanction, wdth the one exception before specified; and as to this, the bank was placed in precisely the same condition it would have been in if the act had never passed. When, therefore, it paid the January interest in 1840, it did no more than its charter required. It would, have been illegal to refuse; and the performance of a mere legal duty entitles it to no charge against the commonwealth. This construction limits the exception to the interest due in January 1840. For subsequent payments, made after the act of December 1839, and other acts continuing the suspension, it would have been entitled to *745 the premium under the act of 1838, unless those acts had made some other provision. If, therefore, any loss for premiums was incurred in making payments of in- , . . „ , • terest at subsequent periods, as alleged in argument, such payments were' within the act of 1838. And hence too the necessity of the section in the act of March 18. 1840, (Sess. Acts of 1839-40, ch. 65. § 13. p. 55.) respecting the interest falling due in July; a provision in effect similar to that contained in the act of the 11th December 1839, but applying to the July interest only.
This construction reconciles all the acts, and the various provisions contained therein. It gives to the act of 1838, for the support of public credit, the construction obviously necessary to give it any validity. It gives to the proviso in that act the construction which enables the bank to claim a credit for the discount it may have been subjected to, whenever it has seemed expedient to the legislature to give a general sanction to a suspension. It imparts full force and efficacy to the proviso in the act of December 11. 1839, by construing it as excepting from suspension so much of the public money as was required to pay the interest due in the following January; and by limiting its operation to that payment, it leaves .the act of 1838 to operate on all subsequent payments made during a period of authorized suspension, and so shews the necessity of the provision in the act of March 18.1840, for relieving the commonwealth from the charge for premiums on the July interest falling due in that year.
I am therefore of opinion that the charge preferred in this case was properly disallowed by the auditor.
A question of practice has been argued, upon which a decision is desired. The claim being for premiums on payments of interest to the public creditors, it is contended that it should have been preferred to the second *746 and not to the first auditor, as the warrants for the interest were issued by the second auditor. The first auditor, it is argued, can know nothing of the public debt contracted for purposes of internal improvement, or Aether the interest was really due. There is not much weight in this objection.
It was not the business of the bank, to which a warrant for interest was presented, to enquire into the right of the bolder to receive the amount. That matter was confided by the commonwealth to her own officers. All that the bank had to do was to see that the warrant was in the form prescribed by law, and authenticated by the proper officers; and, when it paid the holder, to charge the premiums in account with the commonwealth. The amount of those premiums became a claim against the commonwealth, to be audited by the first auditor, the general accounting officer, not upon the evidence of the books on which the public debt was listed, or on which it was transferable, but upon the production of the warrant and check, duly authenticated by the officers authorized to issue and give them.
As to the jurisdiction of the particular court: previous to the division of the jurisdiction of the court between two judges, the same judge had jurisdiction of all such applications. The proceeding was by way of petition, and it would seem to have been of no consequence whether addressed to his common law or to his chancery ear. He could direct an issue and impannel a jury to try any controverted fact. The division of jurisdiction between two judges does not vary the question. The application may be addressed to either, as convenience may require. And this being a case involving accounts and questions between principal and agent, it would seem to have been most properly addressed to the judge having charge of the chancery side of the court.
*747 Stanard, J.
The objections to the channels through which the bank pursued its claim are untenable. The auditor was the proper officer to whom to present the claim, and the judge of the superior court on the chaneery side had jurisdiction of the appeal from the decision of the auditor. At all events, no objection being made on this ground in the court below, it ought not to be entertained here.
To determine the validity of the claim preferred by the bank, the material question to be solved is, what is the true construction and effect of the act (and especially of the proviso thereto) of the 11th of December 1839 ?
This construction depends on the legislative intent. In the earnest and elaborate argument of this case, the counsel on both sides, agreeing in nothing else, properly admitted that that was the essential enquiry. The construction by this court is but the judicial expression of the result of its enquiry, under the guidance of well considered and established rules, into the intent of the legislature, and is just and sound only so far as it successfully ascertains and gives effect to that intent.
The bank founds its title to the reclamation it makes of the commonwealth on the act of the 28th of March 183S, which declares by its 1st section, that the interest which should thereafter accrue for public loans, made prior or subsequent thereto, should be paid in current gold and silver coins of -the United States, or in their equivalent, at the option of the holder; and by its 2d section, that the warrants on the banks for such interest shall be paid as prescribed by the 1st section, with a proviso that the banks shall be entitled to credit in account with the commonwealth for whatever premium or discount they might be subjected to in making payment of those warrants.
The argument is, that this law was indefinite in its duration and has never been repealed, and that the *748 claim under it to the reclamation in question is compal*ble the intent of the proviso in the act of December 1839; in other words, that, on sound principles of . . . . . A construction, an intent cannot be judicially imputed to legislature to exempt the payment by the banks of the interest on the public loans falling due in January 1840 from the operation of the 2d section of the act of March 1S38.
On the other hand, it is insisted that the proviso to the 2d section of the act of 28th March 1838 was temporary, made for the existing occasion of suspended specie payments, and that it became, On the resumption of specie payments by the banks, fundus officio.
In maintenance of these conflicting propositions, the counsel have very properly brought under the notice of the court the various acts of the legislature from the period of the first suspension in May 1837 until the close of the second suspension, as sources from which light, of more or less distinctness, might be shed on the enquiry into the intent of the legislature in its different enactments, and especially in the proviso to the act of 11th December 1839.
At the time of the first suspension of the banks, the laws then existing enforced specie payments by forfeitures and heavy penalties for failing to make them. It was by these sanctions that the rights of the creditors of the banks to have their demands paid in specie were guarded. The acts of the extra session of 1837 and of the session of 1837-8 suspended the laws inflicting those forfeitures and penalties, and though they did not protect the banks from demands for specie, removed the sanctions by which such demands were to be enforced. The suspension, though not unconditionally legalized, was tolerated, by the removal of those sanctions, and by the further provision that the public taxes should be payable in the notes of the banks, and that executions for public dues might be discharged in such *749 notes as were receivable for taxes. The proviso to the i act of the 28th March 183S was passed during such period of tolerated suspension by the banks of specie pay- , n i ^ • . 'if* i ments, when all the sanctions intended to coerce such payments were by law suspended, and of course-the creditors of the banks, and among them the holders of warrants for the interest of public loans, were disarmed of the means previously provided by law to compel the payment in specie of their claims. That proviso, passed during a time of suspension, was applicable only to the exigencies arising from that condition of things. On the resumption of specie payments by the banks, either voluntarily, or under the coercion arising from the expiration of the suspension of the laws inflicting penalties and forfeitures for failing to pay specie, the warrants for the interest on the public loans would be payable in specie, and the banks could not refuse so to pay them without forfeiting their charters to the state, and becoming responsible to the holders of such warrants, upon motion on ten days notice, for 10 per cent, damages and 15 per cent, interest. Whatever construction may be given to the act of 28th March 1838, from the nature of things it became dormant after the resumption of specie payments, and reinstatement of the forfeitures and penalties for failing to make them, and continued so during the continuance of such payments.
The proviso in the act of 2Sth March 1838 thus becoming dormant from the resumption of -specie payments, and necessarily continuing so until a suspension of those payments, it is indispensable for the counsel of the bank to maintain that such suspension revived it. For if, as the counsel of the commonwealth contends, it became fumctus officio on the resumption of specie payments, and could only be resuscitated by subsequent legislation, the foundation of the claim of the bank is taken away. The revival and renewed activity of that proviso might result either from the simple *750 act of suspension of specie payments, operating ipso facto its resuscitation until repealed or modified by subse<luen,; legislation; or from the restoration by law of the stale of things in which it had its birth, to wit, a susPension of specie payments, so far tolerated by law, as the exemption of the bank from forfeitures and penalties, and the withdrawal from its creditor of the aid of those legal sanctions by which specie payments were to be coerced, imply such toleration.
The counsel of the bank insists that suspension of specie payments ipso facto restored activity to the proviso in the 2d section of the act of March 1838, so that if the suspension had occurred before the payment of the interest on the state loans that became due in July 1839, and the bank had paid that interest with the specie from its vaults, or had purchased specie with its notes at a premium, or delivered its notes at a discount to make them equal to specie, it would have been entitled to charge the commonwealth not only the nominal amount of the warrants for the interest, but a further sum equal to the premium at which specie sold in the market for the notes of the bank, or the premium paid for such specie, or the discount of such notes. If the counsel be right, the title to make this charge must exist irrespective of the conduct of the bank in suspending, unaided by legislative acquiescence in the suspension, and in spite of any legislative resistance to it: the bank might discharge its debt to the commonwealth by discharging a claim on the commonwealth less, by the amount of the depreciation of its notes, than the amount of such debt; and the only plea to sustain the claim would be founded on its own act in direct violation of law, subjecting its charter to forfeiture, and incurring a responsibility to its creditor much larger than the premium on the specie it might have paid. Would it not be an unexampled incongruity in the law, at the same lime that it denounces *751 against the bank the forfeiture of its charter to the state, and heavy responsibility to the creditor who is not paid in specie, to allow it to found on the act incurring such forfeiture and responsibility a title to discharge its debt by casting on the creditor all loss resulting from the depreciation caused by that act ?
That it was not intended by the act of March 1838 to confer on the banks a legal right, on any future suspension, ¡respective of the circumstances of justification or excuse for such suspension, and of the legislative discretion acting on such circumstances, to discharge their responsibilities, to the extent of the interest on the public loans, by charging to the commonwealth the amount of the premium on specie, or of the depreciation of their own notes, in addition to the amount of the public debt paid while the aforesaid laws of forfeiture and penalty were in full activity, is evidenced by the consideration that in such a predicament this legal right could at the discretion of the legislature be rendered wholly nugatory. Had the banks suspended before the month of July 1839, and paid the July dividend in specie or specie funds purchased at a premium, of what avail would the legal right to charge that premium to the commonwealth be, when encountered by the legislative will resisting that claim, and the responsibilities of the banks incurred by the act of suspension, and which the legislature had the power to enforce? Suppose the banks and the commonwealth accounting together in respect to such payment. The banks claim to debit the commonwealth with the premium paid for specie, or the depreciation of their notes. The legislature, representing the commonwealth, enquires what has caused this premium or depreciation. The banks answer, “ We have been compelled to violate our legal- obligations, and refuse the payment of our debts in specie or its equivalent.” The legislature rejoins, “ If you have paid these claims *752 in specie or its equivalent, you have but discharged the duty imposed bylaw, and enforced by its strongest sanctions; and if this charge is made because that duty had been violated,' then the very act by which only you have been subjected to pay this premium, or to suffer this depreciation, has subjected you to the forfeiture of your charter, and to 10 per cent, damages and 15 per cent, interest on the amount of the debt you have refused to pay in specie or its equivalent; and without discussing the question whether you had a legal right, under the act of March 1838, to make the charge against our will, that will is sufficient to enforce the law you have violated, and thereby to subject you to a much heavier loss than will be averted by the successful assertion of your legal right under the proviso of the act of March 1838.” It is therefore obvious, that unless the legislature should choose to assent to or acquiesce in the claim of the banks to credit for the premium on specie or its equivalent, used in paying the interest on the state loans while the laws denouncing penalties and forfeitures for the suspension of specie payments were in full vigour, the supposed legal right of the banks under the proviso of the act of March 1838 might at the discretion of the legislature be rendered utterly abortive: and the conclusion seems to me most cogent, that no such legal right, irrespective of or in opposition to the legislative will, results from that act; and that, having become dormant on the resumption of specie payments after its passage, a subsequent suspension, not sanctioned or tolerated by law, did not ipso facto resuscitate it. The most that can be said is, that it would be resuscitated when the state of things existing at the time of its passage should recur, to wit, a suspension tolerated so far as the withdrawal of the legal sanctions of forfeiture and penalty for failure to pay specie would import such toleration. A benign consideration of the question might, and I think *753 probably would, justify the construction which would sustain such revival, either as the proper exposition of the original act, or as a fair implication of legislative intention from the enactment by which the status existing in March 1838, in respect to the unconditional exemption of the banks from penalty and forfeiture for failing to pay specie, should be restored. That such would be the effect of the exceptionless restoration of the said status of March 1838, was probably the construction of the legislature, when the act of 18th March 1840, continuing until the 1st of April 1841 the suspension of the forfeitures and penalties for failing to pay specie, provided that the premiums for the specie or specie funds, in which the interest on the public loans falling due in July 1840 might be discharged, should be paid by the banks; and such the construction which, in the opinion of the officers of the commonwealth, justified an allowance said to be made to the banks in account for such premiums during the tolerated suspension posterior to July 1840.
When the act of 11th December 1839 was passed, the banks were exposed to demands for specie for all their responsibilities on their notes, or on checks or warrants on general deposits with them, and liable to heavy penalties in the form of damages and a high rate of interest for failure to meet those demands. The function of that act was to withdraw, by suspending for a time, those sanctions by which the rights of the creditors of the banks were to be enforced. Had the suspension of the penalties and forfeitures been exceptionless, then the status of March 1838 would have been restored, and with it activity given to the proviso of the act of March 1838. But the suspension of the penalties and forfeitures was not exceptionless. It was qualified by the proviso that the interest on the state loans falling due in January 1840 should be paid by the banks in specie or its equivalent. And the effect *754 of that proviso is the material question, to the elucidation and solution of which the foregoing review and exposition of the previous legislation has been deemed . . . n by me apposite, n not necessary.
Whether the proviso be regarded as an exception of the class of claims specified in it from the suspensive effect of the body of the act on the sanctions by which the obligations of the banks to their creditors were guarded, so as to leave those sanctions in full effect in respect to the specified class, while in respect to others they were temporarily withdrawn; or as a condition, on the nonperformance of which the suspension of those sanctions in respect to all claims would terminate, and the banks be exposed to forfeiture and penalty to the same extent as they would in case the act had not been passed, it must, I think, have the same interpretation, as to the intent in respect to the liability of the banks or the commonwealth for the premiums for specie or specie funds in which the interest on the state loans falling due in January should be paid. In either view, it left all those sanctions in full activity in respect to the claimants of the January interest on the public loans, and pro hac vice the rights and responsibilities of the banks were as if the act had not passed. Any payment made of those claims would necessarily stand on no better ground than if the act of December had not passed ; and had not that act passed (if the view heretofore taken be correct) the banks would not be entitled to charge to the commonwealth the premium of specie, or depreciation of their notes, in which the interest might be paid. If this was not the intent of the proviso, what other function can reasonably be ascribed to it ?
The able counsel of the bank anticipated this question, and discerned the conclusion necessarily flowing from the inability to give a sufficient answer to it; and he has ingeniously suggested, that whereas the act of *755 March 1838, while it entitled the banks to charge the • . . . . premiums paid for specie or specie funds when they were provided and applied by them to the discharge of the interest on the public loans, imposed on them no obligation secured by adequate sanctions to provide and apply such funds to that object, the proviso in the act of December 1839 supplied that sanction, and that was its proper and adequate function. That such was not its intended function I think is perfectly clear. What are the banks authorized by the act of March 1838 to do? To discharge the debts due the commonwealth in paper depreciated when compared with specie, and charge the nominal amount of the depreciated paper to the commonwealth. In effect that act rather confers a privilege than imposes a duty on the banks, and it is not probable that the legislature could deem it necessary to enforce by any sanction the exercise of that which, though in words imposing a duty, in substance confers a privilege. The argument of the counsel for the bank supposes that the existing and operating law, as understood by the legislature, entitled the banks to charge the premiums in question to the commonwealth (in other words, to pay the commonwealth the nominal amount of their depreciated paper in discharging a smaller debt of the commonwealth), and then that the legislature, by the proviso in question, proceeded to menace the banks with forfeiture and heavy penalties if this privilege were not exercised. Surely it could not enter into the mind of the legislature that such coercion was necessary. If the law authorized the banks (specie bearing a premium of ten per cent, or bank notes being depreciated that amount) to extinguish a debt due by them to the commonw'ealth of 110 dollars, by paying notes to that amount, or specie purchased with that amount of notes, to a creditor of the commonwealth in discharge of a claim of 100 dollars, what possible motive, interest, or even right, could they *756 have to refuse ? The transaction might benefit but could not injure the banks. To assign such a function to the proviso would, giving expression to this interpretation, make it read thus: “ provided, that the banks shall pay to the claimants of the interest on state loans falling due in January, specie or notes, for which they shall have credit with the commonwealth to the full nominal amount of the notes, or of the-specie with the premium paid for it.” Such a proviso would have been supererogatory, if not ridiculous; and therefore the construction which impresses that meaning upon the proviso actually used cannot be just.
That the legislature did not intend that the banks should have credit with the commonwealth for the excess of the value of specie, or for premiums paid for it, is further evinced by the circumstance that the proviso makes the duty of paying the January interest in specie dépendant on the indebtedness of the banks to the commonwealth, and limits their liability to make the payment in specie or its equivalent, to the amount that might be to the credit of the commonwealth. Surely it cannot be doubted that the legislature supposed, that if there was as much to the credit of the commonwealth in the banks as would pay the interest, the banks would, under the proviso, be compelled to pay the whole interest; and yet, if the proviso be so interpreted as to leave the banks at liberty to charge the premium on specie to the commonwealth, it would, in the predicament supposed, be unavailing to secure the payment of the whole interest in specie.
On this enquiry into the intent of the legislature, it is not irrelevant to advert to the fact that the same assembly which enacted the law of December 11. 1839, a law obviously passed under jealous if not hostile feelings to the banks, and limiting the qualified toleration of the suspension to eighty days, by a subsequent act passed after a more thorough investigation, and upon a *757 more indulgent consideration of the necessities under which the suspension of specie payments had taken place, extended the toleration for more than twelve months, yet required that the banks should bea'r the loss of the premiums on specie or specie funds to pay the interest falling due before the next session of the legislature, to wit, in July 1840. It cannot be supposed that the same legislature which imposed this loss upon the banks at a time when, on deliberate investigation, they were deemed entitled to this more liberal indulgence, intended, by the more stinted and jealous indulgence accorded by the previous act, to exempt them from that loss.
On the whole, my opinion is that the banks were not entitled to the premium of the specie, or specie funds, with which the interest on the public loans falling due in January 1840 was paid; and that the decree of the court below be reversed, and the appeal from the decision of the auditor dismissed.
Bjrooke, J.
There are two impressions that have great influence in ruling this case, neither of which I think justified by any thing in the record or in the law. One is, that the bank, as the fiscal agent of the state, was bound to pay the interest on the public debt, without any allowance for the difference in the value of specie and bank paper during the suspension of specie payments. I find nothing in the record or in the law, which constitutes the bank the fiscal agent of the state, in any other degree than it is the fiscal agent of all who deposit money with it, and draw out such money by checks. The deposit of the money collected for public taxes may afford to the bank a temporary addition to its capital, upon which it may trade: and so may every deposit made by individuals. But that, I think, does not constitute the bank the fiscal agent of individual depositors, and oblige it to pay their checks in specie during *758 the suspension of specie payments; though it may be sa'd they have higher claims than the slate, which owns half the stock, and has four votes out of nine in the directory (and may have five if it will) on the question of the suspension of specie payments.
The other impression is, that the release of the forfeitures incurred by the suspension of specie payments was a great boon to the banks. There is nothing in the record to shew that the suspension was not justified by the condition of the currency at the time, or that it was not necessary to prevent the drawing of all the specie from the vaults of the banks. The forfeitures incurred by the suspension must then be- released, or the banks forced into liquidation; which would have been more calamitous to the country than to them. It would have been ruinous to the debtor portion of the community to be compelled to pay their bank debts, ¿nd others also, with a limited currency. The sale of their property would bankrupt the greater number of them. And in what could the taxes be collected ? In the actual condition of things, it was impossible for the state to refuse to release the forfeitures; and I cannot see that it was any boon to the banks, for which they were under an obligation to pay the interest on the public debt without compensation for the difference in the value of specie and paper during the suspension. The stockholders, other than the state, would feel no greater interest in the payment of the interest on the public debt than any other citizens of the commonwealth. These views will be much strengthened by the consideration that a large amount of the deposits of the state was in the paper of the western banks, which had been received for taxes, and was depreciated below the value of the paper of the banks in which it was deposited.
I think, therefore, that these impressions ought to have no influence in the decision of the case.
*759 Disregarding them, and turning to the acts of the legislature applicable to the case, I think there can be no doubt that the compensation claimed by the bank, for the difference in value of paper and the specie which it paid in discharge of the interest on the public debt, ought to be paid by the state. The proviso in the act of 1839, it is admitted, did not repeal the second section of the act of 1838. That section expressly provides that the banks should be entitled to a credit in account with the commonwealth for all premiums or discount to which they might be subjected in order to render their paper equivalent to specie. The act of the 11th December 1839 refers to the payment of the interest on the public debt falling due on the first of January 1840, and directs that the deposit banks shall pay such interest, if required, in specie or its equivalent. One would suppose that the sole object was to authorize the banks to pay the public creditors the interest on the public debt. It was quite unnecessary to repeat the terms on which the payment was to be made; those terms being before stated in the second section of the act of 1S38. All the cases cited in the argument shew that a law is not to be repealed by implication. I shall not examine their application to this case. I think the inference from the act of 18th March 1840 proves that the legislature did not intend, by the proviso in the act of 1839, to repeal the second section of the act of 1838. The 13th section of the said act of 1840 declares that the deposit banks “ shall pay the semiannual interest due from the commonwealth in the month of July next, in specie or its equivalent, if so required by the creditors, without charging any premium therefor.” If the legislature had considered the act of 1839 as repealing the second section in the act of 1838, this refusal in the act of 1840 to compensate the banks for premiums and discount would have been entirely superfluous.
*760 On the merits, supposing those acts of the legislature out of the case, what claim had the state on the other stockholders to pay the interest on the public debt without compensation for the loss on the premiums paid for specie ? I cannot perceive any.
In every view7 of the case, I think the decree was right, and that it ought to be affirmed.